**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LESTER HOWARD,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 25-CV-6705** |
| | : | |
| **CITY OF PHILADELPHIA, *et al.*,** | : | |
| **Defendants.** | : | |

**MEMORANDUM**

**BAYLSON, J.** **AUGUST 7, 2026**

*Pro se* Plaintiff Lester Howard brings this civil action pursuant to 42 U.S.C. § 1983 against the City of Philadelphia and Philadelphia Police Department ("PPD") officers and detectives involved in his arrest and subsequent detention. He also seeks leave to proceed *in forma pauperis* and the appointment of counsel. For the following reasons, the Court will grant Howard leave to proceed *in forma pauperis* and dismiss his Amended Complaint on statutory screening pursuant to 28 U.S.C. § 1915, with leave to amend.

## I. FACTUAL ALLEGATIONS[1]

The facts alleged in Howard's Amended Complaint are somewhat disjointed and difficult to follow. He asserts that on August 18, 2024, he was involved in a use of force incident

[1] The facts set forth in this Memorandum are taken from Howard's Amended Complaint (ECF No. 17). Howard initiated this case by filing a letter Complaint. (ECF No. 2.) After the Court advised him that he was required to file a proper complaint, he filed the instant Amended Complaint, which thus became the governing pleading in this case. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 35 (2025) ("If a plaintiff amends her complaint, the new pleading 'supersedes' the old one: The 'original pleading no longer performs any function in the case.'" (citation omitted)). The Court adopts the pagination assigned to the Amended Complaint by the CM/ECF docketing system. Where the Court quotes from *pro se* pleadings, punctuation, spelling, and capitalization errors will be cleaned up if needed for clarity.

involving Lt. Cole of the PPD. (Am. Compl. at 2-3.) Specifically, Howard asserts that he was exiting the Wine & Spirits located at 180 W. Girard Avenue in Philadelphia when he was confronted by Lt. Cole, who "put one foot on the bottom of the floor to prevent plaintiff from exiting." (*Id*. at 3.) Cole "made several commands to stop and get on the floor," however Howard "refused to get on the floor" and asserts he "was at liberty to leave." (*Id*.) When Howard ignored Cole's orders, Cole "shot [Howard] with his taser gun, lifted [him] in the air, and body-slammed [him] on the floor." (*Id*.) Cole then "grabbed [Howard's] backpack, ripped the straps off . . . and tossed [the] backpack on the outside sidewalk of the Wine & Spirits." (*Id*.) Howard adds that, "[a]fter breaking the straps off [Howard's] book bag and tossing it out of the front door of the store, he opened it, containing no bottles of liquor!" (*Id*.) Howard asserts that Cole and other officers knew or should have known that there was nothing in his backpack. (*Id*. at 4.)

The circumstances of the encounter between Howard and Cole are unclear from the Amended Complaint. The only detailed description of the incident comes from a probable cause affidavit prepared by Detective Febus, which Howard quotes at length, although he "contests the affidavit of probable cause's truthfulness." (*Id*. at 5.) Febus's affidavit states that Cole "responded to the [Wine & Spirits] for a report of a person with a weapon," and that when he arrived at the store, he "observed a physical dispute between [Howard] and a security officer assigned to the store." (*Id*. at 6.) He then "braced the doors closed to keep [Howard] from escaping. [Howard] tried to push his way through the doors, [at which point I] sidestepped out of [his] way and . . . deployed [my] taser ECW twice giving [Howard] 1 cycle of the ECW before he was brought into custody." (*Id*.)

After he was detained, Howard was transported to Episcopal Hospital, accompanied by Sergeant or Lieutenant Jane Doe, and Officers John Doe 1 and 2. (*Id.* at 4.) Howard alleges that Jane Doe "supervised the investigation and instructed the officers to misrepresent a false and fabricated police report." (*Id.*) A doctor at the hospital informed Howard that an x-ray revealed an injury to his shoulder. (*Id.* at 5.) Howard appears to allege that Jane Doe refused to review the body camera footage for the incident because she told him she "already saw it." (*Id.*) Howard was then transported to the 9th District Headquarters where he was detained for 50 hours before he was released. (*Id.*) Howard states that "Detective Febus' affidavit [was] disapproved by the Magistrate Judge/D.A." and that the charges against him were dismissed due to insufficient evidence. (*Id.*) Howard asserts that Detective Febus:

> intentionally or recklessly misrepresented the nature of the call for a person with a weapon. [He] [m]isrepresented that Lt. Cole observed a physical dispute between the defendant [and] John Doe, [including the allegation that I] raised a wine bottle at a security officer as L.T. Cole walks into the vestibule. Detective Febus fabricated these statements "knowingly and deliberately, or with a reckless disregard for the truth"

(*Id.* at 7.) Howard argues that "further investigation could have led to body cam footage or surveillance video or exculpatory evidence that could have resulted in plaintiff's earlier release." (*Id.* at 4.) He contends that, "[a]n officer's duty to investigate specific, readily verifiable claims of innocence in a reasonable time period clearly covers reviewing a surveillance camera video record of a crime, when as here, it was [an] easily available piece of physical evidence." (*Id.* at 7.) He further asserts that the City of Philadelphia "does not have a policy or training instructing detectives that relevant information must be included in [an] affidavit of probable cause, even if it is exculpatory." (*Id.* at 7-8.) He states that "[t]his claim is also based on a single-incident theory." (*Id.* at 8.)

Based on the above allegations, Howard asserts Fourth Amendment claims of excessive force, unreasonable search and seizure, false arrest, false imprisonment, and malicious prosecution. (*Id*. at 1-2.) He also asserts a *Monell*[2] claim against the City and state law tort claims of assault and battery, fraud, intentional misrepresentation, and negligent misrepresentation. (*Id*. at 2.) He seeks compensatory and punitive damages, attorney's fees, and costs. (*Id*. at 1.)

## II. STANDARD OF REVIEW

The Court will grant Howard leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Amended Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 560 U.S. 544, 556 (2007)). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Amended Complaint as true, draw all reasonable inferences in Howard's favor, and ask only whether the Amended Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

---

[2] *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694 (1978).

Because Howard is proceeding *pro se*, the Court construes his allegations liberally. *See Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245). An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants." *Mala*, 704 F.3d at 245; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) (*per curiam*) ("While a court must liberally construe the allegations . . . this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

The Court must also review the pleadings and dismiss the matter if it determines that the action fails to set forth a proper basis for this Court's subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Group Against Smog & Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006)).

## III. DISCUSSION

### A. Constitutional Claims

Howard asserts constitutional claims. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "Section 1983 provides a civil remedy for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'" *Halsey v. Pfeiffer,* 750 F.3d 273, 290 (3d Cir. 2014) (quoting 42 U.S.C. § 1983); *see also Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005) (explaining § 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." (quoting *Baker v. McCollan,* 443 U.S. 137, 145 n. 3 (1979))). To state a claim under § 1983, a plaintiff must demonstrate "that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury." *Karns v. Shanahan,* 879 F.3d 504, 520 (3d Cir. 2018) (quoting *Elmore,* 399 F.3d at 281); *see also Halsey,* 750 F.3d at 290 ("To state a claim under section 1983, a plaintiff must demonstrate that 'some person has deprived him of a federal right ... [and] that the person who has deprived him of that right acted under color of state or territorial law.'" (quoting *Gomez v. Toledo,* 446 U.S. 635, 640 (1980))).

**1. Lack of Personal Involvement**

Howard asserts unspecified claims against John Doe 1 and 2 and Detective Kovacs, but they are barely mentioned in the Amended Complaint. "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Jutrowski v. Township of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct." (quoting *Iqbal*, 556 U.S. at 677)); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556

U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"). Howard alleges that Defendants John Doe 1 and 2 helped Jane Doe accompany Howard to Episcopal Hospital for treatment for his injuries. He also states that the officers and Jane Doe "took oath" for his arrest,[3] and received the Taser prongs from hospital personnel after they were removed from Howard's body. (Am. Compl. at 4-5.) There is no factual allegation plausibly suggesting that John Doe 1 and 2 were involved in any violation of Howard's constitutional rights. The claims against them will therefore be dismissed without prejudice. As to Detective Kovacs, he is mentioned only once in the Febus Affidavit, stating that, "Det. Kovacs # 9071 recorded store security video that shows the defendant walks into the vestibule, the defendant then attempts to push through the door . . . ." (*Id*. at 6.) Again, there are no factual allegations suggesting that Kovacs engaged in any violation of Howard's constitutional rights. Accordingly, the claims against him will be dismissed without prejudice.

**2. False Arrest/False Imprisonment**

Howard alleges claims of false arrest and false imprisonment. His "false arrest and false imprisonment claims are nearly identical causes of action that courts analyze together." *Covington v. Plymouth Twp. Police Dept.*, 779 F. Supp. 3d 509, 523 (E.D. Pa. 2025) (citing *Wilson v. Dewees*, 977 F. Supp. 2d 449, 455 (E.D. Pa. 2013); *LeCount v. Kropp*, No. 25-1161, 2025 WL 790935, at *2 (E.D. Pa. Mar. 12, 2025)); *see also Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("False arrest and false imprisonment overlap; the former is a species of the latter."). These claims sound under the Fourth Amendment. *DeLade v. Cargan*, 972 F.3d 207, 211 (3d

[3] It is unclear what Howard means by "took oath."

Cir. 2020) ("[T]he Supreme Court has recognized the Fourth Amendment—and not the Due Process Clause of the Fourteenth Amendment—as the appropriate provision of the Constitution under which to analyze allegations of unlawful arrest and pretrial restraint." (citations omitted)); *see also Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017) ("If the complaint is that a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment.").

The Fourth Amendment requires arrests, detentions, and prosecutions to be supported by probable cause. *Harvard v. Cesnalis*, 973 F.3d 190 202-03 (3d Cir. 2020); *Covington*, 779 F. Supp. 3d at 523 ("To state these claims under Section 1983, a plaintiff must [plausibly allege] 'that: (1) there was an arrest; and (2) the arrest was made without probable cause.'") (quoting *Saintil v. Borough of Carteret*, No. 22-2898, 2024 WL 3565308, at *6 (3d Cir. July 29, 2024) (citing *Groman v. Township of Manalapan*, 47 F.3d 628, 634 (3d Cir. 1995))); *see also Noviho v. Lancaster County*, 683 F. App'x 160, 164 (3d Cir. 2017) ("Fourth Amendment false imprisonment and false arrest claims rise and fall on whether probable cause existed for the arrest." (citation omitted)). "Probable cause exists if there is a 'fair probability' that the person committed the crime at issue." *Wilson v. Russo*, 212 F.3d 781, 789 (3d Cir. 2000). Courts "consider the existence of probable cause via a 'common sense approach' based on the totality of the circumstances, and viewed from the perspective of an objectively reasonable police officer." *Young v. City of Pittsburgh*, 562 F. App'x 135, 140 (3d Cir. 2014) (internal citation omitted). The standard is "not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense." *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988). For false arrest claims involving multiple charges, establishing probable cause on one charge insulates the defendant

from liability. *See Rivera-Guadalupe v. City of Harrisburg*, 124 F.4th 295, 303 (3d Cir. 2024); *Bracken v. Township of Manor*, No. 23-1763, 2024 WL 4210535, at *3 n.5 (3d Cir. Sept. 17, 2024) (citing *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 n.14 (3d Cir. 2008)).

"To properly analyze a claim asserting an illegal search and seizure under the Fourth Amendment, [the plaintiff] must plead the circumstances under which the search arose." *Medina v. Aprile*, No. 23-1057, 2023 WL 3440236, at *9 (E.D. Pa. May 12, 2023) (citation omitted); *Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting claims for false arrest and imprisonment, "[plaintiff] needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"); *Jenkins v. City of Philadelphia*, No. 15-3271, 2015 WL 5585186, at *3 (E.D. Pa. Sept. 23, 2015) (dismissing false arrest, false imprisonment and malicious prosecution claims because plaintiff failed to assert a plausible claim of lack of probable cause where plaintiff, while alleging that he was twice arrested, did not have drugs in his possession, did not break the law and the police confiscated his property, "assert[ed] no other facts that would shed light on the circumstances under which he was arrested, on what the officers knew or should have known at the time of the arrest, or on any other factor that might have a bearing on the claims he attempts to raise"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing false arrest, false imprisonment, and malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all of the allegations against them in the underlying criminal proceedings were false).

Howard's false arrest and false imprisonment claims are not plausible. Other than citing Detective Febus's probable cause affidavit, which he claims is "untruthful," Howard does not

allege facts explaining the circumstances preceding his arrest or why Lt. Cole lacked probable cause to arrest him. He also does note state what offenses he was arrested for, without which the Court has no basis to determine whether the facts plausibly allege a lack of probable cause to arrest. Howard claims that Febus "intentionally or recklessly misrepresented the nature of the call for a report of person with a weapon," but does not provide his own account of the events that precipitated the call to police. Without more, Howard does not plausibly allege that police officers lacked probable cause to arrest him, and his false arrest and false imprisonment claims will be dismissed without prejudice.

**3. Excessive Force**

Howard also asserts an excessive force claim against Lt. Cole based on the August 18, 2024 incident. A claim of excessive force that occurred during an arrest is governed by the Fourth Amendment. *See Manuel*, 580 U.S. at 367; *Albright v. Oliver*, 510 U.S. 266, 274 (1994) ("The Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it."). "[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S. 386, 395 (1989); *see also Santini v. Fuentes*, 795 F.3d 410, 417 (3d Cir. 2015) ("In an excessive force case, we determine whether a constitutional violation has occurred using the Fourth Amendment's objective reasonableness test."). Objective reasonableness is evaluated under the "totality of the circumstances" and "from the perspective of the officer at the time of the incident" without "the benefit of hindsight." *Brown v. Upper Darby Police Dep't*, No. 20-1452, 2021 WL 2948833, at *3 (3d Cir. July 14, 2021) (*per curiam*) (quoting *Santini*, 795 F.3d 410, 417 (3d Cir. 2015). "Courts determine whether the force used is 'objectively reasonable'

based on the totality of the circumstances, . . . and certain factors, including: 'the facts and circumstances of each particular case, . . . the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Klein v. Madison*, 374 F. Supp. 3d 389, 407 (E.D. Pa. 2019) (quoting *Graham*, 490 U.S. at 386)).

As with his false arrest claim, the facts surrounding Howard's excessive force claim are sparse and somewhat confusing. He appears to assert that Lt. Cole reported to the Wine & Spirits store based on a call of a person with a weapon and that Cole falsely claimed to have witnessed Howard engaged in a "physical dispute" with the store's security officer when he arrived. (Am. Compl. at 6.) Other than disputing the police account, Howard does not state what happened at the store that prompted the 911 call. His allegations regarding the physical encounter with Lt. Cole are largely consistent with those in Detective Febus's affidavit. He alleges that Cole blocked the exit of the store and ordered him to "stop and get on the floor." (*Id.* at 3.) Howard states he "refused to get on the floor [and] was at liberty to leave," and attempted to leave the store. (*Id.*) At that point, Cole shot him with the Taser and then "lifted [Howard] in the air and body-slammed him on the floor." (*Id.*)

"The use of a Taser during an arrest, especially when the suspect is resisting arrest, may be reasonable." *Geist v. Ammary*, 40 F. Supp. 3d 467, 480–81 (E.D. Pa. 2014); *citing Brown v. Cwynar,* 484 F. Appx. 676, 681 (3d Cir. 2012) (noting how the use of a Taser on a suspect resisting arrest is not inherently "excessive force"). Nonetheless, "the deployment of a taser . . . remains a relatively serious use of force." *Ickes v. Borough of Bedford,* 807 F.Supp.2d 306, 323 (W.D. Pa. 2011). The three factors set forth in *Graham* to determine the reasonableness of a use of force, i.e. the severity of the underlying crime, the potential danger to

those involved, and any attempt by the suspect to evade arrest, should guide a court's consideration of whether use of a Taser was reasonable. *See Boyden v. Twp. of Upper Darby*, 5 F. Supp. 3d 731, 738 (E.D. Pa. 2014). Based on the sparse facts alleged, Howard does not plausibly allege that Lt. Cole's use of a Taser was excessive in the circumstances. As noted above, it is unclear what events preceded the confrontation between Cole and Howard at the store exit; those facts are relevant because the crime Howard was suspected of committing and the threat he posted to Cole and the public are important to assessing the plausibility of Howard's allegation that Cole's use of force was unreasonable. The allegation that Howard refused to comply with Cole's orders to stop and get down, and instead attempted to leave the store, undermines his assertion that the use of force was unreasonable. *See Geist*, 40 F. Supp. 3d at 480–81; *see also Brown,* 484 F.App'x. at 676 (holding that the use of a Taser on plaintiff during arrest was not excessive force after officer was called to store to deal with a "disruptive customer" and the plaintiff/customer was non-complaint after several requests by officer to stop). In any event, because Howard fails to plead the factual context for Lt. Cole's use of a Taser, his Fourth Amendment claim based on the use of a Taser is not plausible. For the same reasons, Howard's excessive force claim based on the allegation that Cole picked him up and body-slammed him is not plausible without further factual context for the use of force. However, the Court will grant Howard leave to amend in the event he can allege additional facts sufficient to state a plausible claim under the standards set forth above.

**4. Malicious Prosecution**

Howard asserts a malicious prosecution claim against unspecified Defendants. To state a Fourth Amendment malicious prosecution claim, a plaintiff must plausibly allege that a government official charged him without probable cause, leading to an unreasonable seizure of

his person. *Chiaverini v. City of Napoleon*, 602 U.S. 556, 558 (2024) (citing *Thompson v. Clark*, 596 U. S. 36, 43, and n.2 (2022)). A malicious prosecution claim under § 1983 has five elements: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 82 (3d Cir. 2007). That a "valid" crime was also charged along with the charge that ended in the plaintiff's favor does not create a categorical bar to a claim. *Chiaverini*, 602 U.S. at 562 ("The question here is whether a Fourth Amendment malicious-prosecution claim may succeed when a baseless charge is accompanied by a valid charge. . . . Consistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's *charge by charge*." (emphasis added)); *see also Harvard v. Cesnalis*, 973 F. 3d 190, 199 n.3 (3d Cir. 2020) ("[P]robable cause on one charge 'does not foreclose a malicious prosecution cause of action' as to a separate charge which lacks probable cause (quoting *Johnson*, 477 F. 3d at 83)). A "favorable termination" occurs when a prosecution ends "without a conviction." *Thompson*, 596 U.S. at 49 ("In sum, we hold that a Fourth Amendment claim under § 1983 for malicious prosecution does not require the plaintiff to show that the criminal prosecution ended with some affirmative indication of innocence. A plaintiff need only show that the criminal prosecution ended without a conviction.").

Howard's malicious prosecution claim is undeveloped and therefore not plausible. As an initial matter, he does not state what charges were filed against him, without which the Court cannot evaluate whether he alleges facts indicating an absence of probable cause for those charges. *See Gayle v. City of Easton*, No. 26-1690, 2026 WL 1880183, at *7 (E.D. Pa. June 30,

2026) ("Gayle has failed to meet the plausibility standard since he does not identify the crimes he was charged with committing nor explain why it would have been unreasonable for officers to charge him with those crimes."). It is also not clear against whom he asserts his malicious prosecution claims and on what basis. And while the charges against him were ultimately dismissed, there are no facts suggesting that any of the Defendants initiated the charges maliciously or for an improper purpose. Without more, Howard's malicious prosecution claim will be dismissed, with leave to amend. *See, e.g., Godfrey v. Pennsylvania*, 525 F. App'x 78, 80 (3d Cir. 2013) (*per curiam*) (explaining that, to the extent plaintiff was asserting a malicious prosecution claim, plaintiff "needed to point to facts suggesting that Defendant Thompson lacked probable cause to believe he had committed the offense for which he was arrested"); *Santiago v. Humes*, No. 14-7109, 2015 WL 1422627, at *4 (E.D. Pa. Mar. 30, 2015) (dismissing, *inter alia*, malicious prosecution claims when plaintiffs failed to "affirmatively assert facts to show that the Officer Defendants did not have probable cause" when plaintiffs simply alleged that all allegations against them in the underlying criminal proceedings were false).

**5. *Monell* Claim**

To state a claim for municipal liability, a plaintiff must allege that the defendant's policies or customs caused the alleged constitutional violation. *See Monell*, 436 U.S. at 694; *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). "[W]hen the absence of action denies individuals their constitutional rights, the failure to act can amount to a policy or custom." *Newsome v. City of Philadelphia*, 500 F. Supp. 3d 336, 343 (E.D. Pa. 2020) (citing *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1060-61 (3d Cir. 1991)). "[O]ne whose claim is predicated on a failure or inadequacy," need not identify a municipal policy or custom,

and instead, "has the separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate indifference on the part of the municipality." *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019). A plaintiff satisfies this standard by alleging: "(1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.* Allegations that simply paraphrase the standard for municipal liability, are too vague and generalized to support a claim against the City. *See, e.g.*, *Szerensci v. Shimshock*, No. 20-1296, 2021 WL 4480172, at *7 (W.D. Pa. Sept. 30, 2021) ("Plaintiffs' conclusory allegation, which generally paraphrases the relevant standard, is insufficient to state a claim for § 1983 liability under *Monell*." (citing cases)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *See Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

Howard asserts a *Monell* claim against the City of Philadelphia based on what he claims is a lack of a policy or training for its detectives, instructing them that they must include "relevant information . . . in an affidavit of probable cause, even if it is exculpatory." (Am. Compl. at 8-9.) Howard's claim is not plausible because he has not alleged a plausible underlying constitutional violation, without which there can be no derivative municipal liability. *See Mulholland*, 706 F.3d at 238 n.15. Accordingly, Howard's *Monell* claim will be dismissed with leave to amend.[4]

[4] The Court notes that Howard separately filed an Exhibit containing a copy of the Record of Declination filed in his case (ECF No. 20), and a document titled "First Amended Monell Claim." (ECF No. 22.) The Court is not authorized to permit piecemeal amendment or gradual supplementation of the operative pleading over time. *See Bryant v. Raddad*, No. 21-1116, 2021 WL 2577061, at *2 (E.D. Pa. June 22, 2021) ("Allowing a plaintiff to file partial

**B. State Law Claims**

Because the Court has dismissed Howard's federal claims, the Court will not exercise supplemental jurisdiction under 28 U.S.C. § 1367(c) over any state law claims. Accordingly, the only independent basis for jurisdiction over any such claims is 28 U.S.C. § 1332(a), which grants a district court jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."

Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal diversity is constitutionally required. This means that, unless there is some other basis for jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 104 (3d Cir. 2015) (quoting *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) and *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 419 (3d Cir. 2010) (internal footnotes omitted)). An individual is a citizen of the state where he is domiciled, meaning the state where he is physically present and intends to remain. *See Washington v. Hovensa LLC*, 652 F.3d 340, 344 (3d Cir. 2011). "[T]he domicile of a prisoner before his imprisonment presumptively remains his domicile during his imprisonment." *Pierro v. Kugel*, 386 F. App'x 308, 309 (3d Cir. 2010). It is the plaintiff's burden to establish diversity of citizenship, *see Gibbs v. Buck*, 307 U.S. 66, 72 (1939); *Quaker State Dyeing & Finishing Co., Inc. v. ITT Terryphone Corp.*, 461 F.2d 1140, 1143 (3d Cir. 1972) (stating that, in diversity cases, the plaintiff must demonstrate complete diversity between the

---

amendments or fragmented supplements to the operative pleading, presents an undue risk of piecemeal litigation that precludes orderly resolution of cognizable claims." (internal quotations omitted)). If Howard files a Second Amended Complaint, he is reminded that in doing so he must allege all facts and legal claims in a single, complete document.

parties and that the amount in controversy requirement has been met); *Jackson v. Rosen*, C.A. No. 20-2842, 2020 WL 3498131, at *8 (E.D. Pa. June 26, 2020).

Howard does not allege the citizenship of the parties. Rather, he provides a Pennsylvania address in his filings and sues the City of Philadelphia along with several PPD officers, which suggests that he and some, if not all, of the Defendants may be Pennsylvania citizens. Accordingly, Howard has not sufficiently alleged that the parties are diverse for purposes of establishing the Court's jurisdiction over any state law claims he intends to pursue.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Howard leave to proceed *in forma pauperis* and dismiss his Amended Complaint. The federal claims will be dismissed for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), with leave to amend. The state court claims will be dismissed without prejudice for lack of subject matter jurisdiction. An appropriate order follows containing additional instructions as to amendment. The Motion to Appoint Counsel will be denied without prejudice as premature.[5]

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, J.**

[5] Howard's case has not passed the screening stage under 28 U.S.C. § 1915 and therefore appointment of counsel would be premature. *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (noting that before exercising discretion to appoint counsel, "the district court must consider as a threshold matter the merits of the plaintiff's claim"). Howard may renew his request after any second amended complaint has been screened for merit.